Dureee, Judge,
delivered the opinion of the court:
Plaintiff in this action seeks disability retired pay computed at 75 percent of the pay of a lieutenant colonel with over thirteen years service from June 7,1955, to the present, to which he claims to be entitled pursuant to Section 402 of the Career Compensation Act of 1949, 10 U.S.C. 1201 (1958).
Plaintiff, after having served as an enlisted man on active duty in the Army from September 9, 1918, through July 15, 1919, applied for a commission in the Army of the United States on June 18,1942. He was appointed a first lieutenant, with waiver for obesity, and served on active duty continuously from July 1, 1942 until June 6, 1955, when he was released from active duty, not by reason of physical disability, but rather because of the expiration of his category. Plaintiff contends that at the time of his release from active duty he was unfit to perform the duties of his rank and office, and that therefore his release not for reason of physical disability was arbitrary, capricious, and thus contrary to law.
This court has often stated that our function in this type of proceeding is to determine not whether the claimant was unfit for service at the time of his release, but rather whether *476 the firiding; of the Secretary of the Army that the serviceman, was fit was so arbitrary, capricious, or unsupported by evidence as to be contrary to the applicable principles of law. O'Brien v. United States, 124 Ct. Cl. 655; Holliday v. United States, 128 Ct. Cl. 647; Prichard v. United States, 133 Ct. Cl. 212; Towell v. United States, 150 Ct. Cl. 422; Robert L. Thompson v. United States, 156 Ct. Cl. 158.
Plaintiff’s contention that his release without disability retirement benefits was arbitrary and capricious is predicated on his affliction with certain maladies that under some circumstances, if present to certain degrees, could be deemed disqualifying. For example plaintiff had been found, prior to retirement, to be suffering a moderate osteoarthritic affliction which was not disqualifying. This is perfectly consistent with the evidence and the applicable regulation[1] which sets moderate osteoarthritis as the minimum degree of the disease prerequisite to a finding of disqualification due to the disease. This regulation definitely does not require disqualification upon discovery of the presence of moderate osteoarthritis.
Similarly, the presence of a mild heart condition is not of itself disqualifying under the applicable regulations.[2]
In dealing with cases of this type it must be remembered that the Career Compensation Act commits the determination of the serviceman’s fitness to perform the duties of his office, grade, rating, or rank, to the discretion of the Secretary. Sections 413 and 414 of the Act, in addition to vesting this authority in the service Secretary, authorize him to prescribe regulations to implement the effectuation of this legislative mandate. The regulations promulgated by the Secretary of the Army to effectuate this legislative authority, while enumerating certain medical standards, reasonably provide that each case will be considered on its individual merits, and that the overriding criterion will be general ability to perform the duties commensurate with the serviceman’s age, grade, branch of service, and normal duties. Army Special Regulations No. 40-120-1, dated October 9, *477 1953, “Medical Standards of Fitness and Unfitness for Retention on Active Duty,” provide in pertinent part:
1. Purpose of standards. * * *
b. * * * Medical examiners should consider these standards as a guide with discretion and not construe them too strictly or arbitrarily, the object being to aid in the determination of whether or not an individual is qualified for further military service. Every case must be considered on its individual merits and the decision of fitness or unfitness based on a consideration of pertinent directives and accepted medical principles.
2. Evaluation of physical defepts.
a. In evaluating physical disabilities, due regard will be given to the physical standards set forth in AR 40-100, AR 40-105, and AR 40-115. However, these directives will not be as strictly interpreted as for appointment or entrance on active duty (par. 4, SR 600-450-5). Appropriate consideration will be given to a record of satisfactory performance of general service over a reasonable period of time, and the individual’s age, grade, branch of service, and normal duties. A finding of physical fitness is appropriate when any physical disability which may be present will not interfere with satisfactory performance of duty, or is not subject to complications or serious aggravation by reason of continued military duty. No individual will be found fit for service unless he is physically capable of performing duties of his office, rank, grade, or rating.
í Í ‡
5. Application of medical standards.—
* * * An individual who is otherwise scheduled for retirement or separation is not automatically found unfit if it is determined that he has a ratable disability. Such an individual is fou/nd to be Unfit only %ohen it is determined that his disability is of such a nature that if he were not retired or separated, he could not perform the duties commensurate with his age, grade, branch, and normal duties. * * * (Emphasis supplied).
On the basis of the record before us we are unable to conclude that the Secretary’s finding that at the time of plaintiff’s release he was fit to perform his duties in accordance with the standards enumerated above was arbitrary, capricious, or contrary to the evidence. While plaintiff suffered various maladies, the record does not require a conclu *478 sion that these afflictions effected, at the time of plaintiff’s release, any significantly greater degree of debilitation than would pertain in most other fifty-eight-year-old males performing similar duties. See McEaddy v. United States, 152 Ct. Cl. 311. Moreover, the fact that plaintiff’s condition may have deteriorated subsequent to his release from service is not of itself determinative of the issue before us, inasmuch as such conditions are compensable by the Veterans Administration, and indeed the present plaintiff is receiving such benefits. The issue before us is whether the Secretary’s decision that plaintiff was physically fit to perform duties commensurate with his rank and office at the time of his release from service was so arbitrary and capricious as to constitute a violation of Ms legislative mandate. In order to establish that the Secretary’s action was so arbitrary and capricious, plaintiff must discharge a very substantial burden of proof. On the basis of the record presently before us, we conclude that plaintiff has not discharged this burden.
For the reasons stated, judgment will be entered for defendant, and the petition will be dismissed.
It is so ordered.
Laramore, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, a citizen of the United States, born March 8, 1897, served on active duty as an enlisted man in the United States Army from September 9, 1918, to July 15, 1919. On June 18, 1942, he applied for a commission in the Army of the United States. On June 25, 1942, he was appointed a first lieutenant, AUS, with a waiver for obesity, and entered on active duty July 1, 1942. He was continuously on active duty until June 6, 1955, when he was released from active duty by reason of expiration of his category.
2. Plaintiff was scheduled to be released from active duty on March 1, 1955, by reason of the expiration of his category. On July 2, 1954, he requested renewal of Ms category effective March 1, 1955, and to expire February 28? 1958. On *479 October 14,1954, he was approved for Category I with expiration. date of April 30,1955.
3. Plaintiff was promoted to lieutenant colonel, United States Army Reserve, on September 15,1954. He was given an annual physical examination on November 24, 1954, and was found to be qualified for general service. An electrocardiogram of the same date was interpreted as normal.
4. Plaintiff testified before the Army Board for Correction of Military Records that he was hospitalized in July 1945 for severe pain in legs and back, but arthritis was not diagnosed at that time. He was hospitalized in Japan in August 1950 for swelling of legs. In 1953 plaintiff fell and fractured two or three of his ribs. He received medical care at the Army Dispensary at 90 Church Street, New York City, where he was told that he had a slipped disc and was placed in an Army hospital at Fort Jay, New J ersey, for neck traction and other treatment. While taking treatment at the hospital at Fort Jay, a part of the equipment broke and he fell on his back.
5» A Medical Board which met on May 23, 1955, found that plaintiff had degenerative joint disease, multiple, moderate, with radiculitus, involving the cervical and lum-bosacral spine. The same Medical Board also found plaintiff was qualified for full military service, including overseas service, and recommended that he be returned to duty with a U-3 and P-3 profile. The findings were approved by the Commanding Officer of the Army Hospital, Fort Jay, New Jersey.
.6. Plaintiff was hospitalized on April 27, 1955, because of his complaints of pains in back, neck, arms, hips, legs, and chest. The report of medical examination, dated May 23, 1955, listed the following conditions:
19. Septum deviated to right.
24. (Item 59) Mixed astigmatism. Presbyopia.
31. Hernia repair scar.
34. Prostate 1+ hypertrophied, benign.
35. Limitation motion shoulders, mild.
38. Limited motion, moderate.
The report of medical examination summarized the diagnosed conditions as follows:
*480 38. (7230) Degenerative joint disease, multiple, due to unknown cause, moderate with radiculitis, involving cervical and lumbosacral spine. 2b. (6100) Hypertrophy, prostate, benign. 59. (3801) Astigmatism, mixed, bilateral.
The examining physicians found plaintiff qualified for duty.
7. A final summary, dated May 23,1955, prepared by Capt. Allan L. Blackman, the examining physician, attached to the report of medical examination of the same date, is as follows :
This 58 year old white officer was admitted to the U.S. Army Hospital, Fort Jay, on 27 April 1955 for evaluation of pain in the back, neck, arms, hips, and legs which have been present since 1943. Associated with these pains have been varying degrees of fatigue. Hospitalizations in 1947, 1950, and 1952 have revealed degenerative joint disease, multiple, due to unknown causes. These symptoms have been partially controlled by aspirin, codeine, and physiotherapy. Since 1947, the patient has also experienced episodes of non-radiating anterior chest pain which are sometimes associated with dyspnea. These episodes are not necessarily related to exertion; they last from five to fifteen minutes and disappear spontaneously. Electrocardiograms in 1945, 1948, 1951, and 1952 were normal. A Master’s Test in 1952 was negative. At the present time these episodes occur on the average of once every two weeks and last about five minutes. They are associated with dyspnea but not necessarily exertion.
Military History: Patient has been on active duty a total of 15 years. In World War I he served in France. Since 1942 he has served in this country and in the Far East.
Family History: Non-contributory.
Past History: Hernia repair 1931. T.&A. 1927.
Physical Examination reveals a well developed, well nourished 58 year old male whose temperature was 98°, pulse 75, blood pressure 115/70. Physical examination was essentially negative except for moderate limitation of motion in the neck, spine, shoulders, and hips, a slightly increased A-P chest diameter, and 1+ benign prostatic hypertrophy.
Laboratory Data: Urea nitrogen 19.7 mg%. White blood count 6,550 with a normal differential. Hemoglobin 16 mg%. _ Sedimentation rate 5 mm/hr. Hema-tocrit 50%. Urinalysis normal.
Electrocardiogram: Tracing within normal limits. A Master’s Test was negative for coronary insufficiency.
*481 X-rays:
Chest: Negative.
Cervical Spine: The lower three cervical vertebrae are grossly abnormal. There is marked narrowing of the intervertebral disc spaces between C-;5 and 6, and C-6 and 7. Marked bony spurring and lipping of the apposing anterior articular surfaces is also present. The 6th cervical segment appears slightly decreased in vertical height. Impression: Severe osteoarthritic changes involving the lower cervical vertebrae with narrowing of the corresponding intervertebral disc spaces.
Lumbosacral Spine: Show rather advanced hyper-trophic changes in the vertebrae. The intervertebral disc spaces appear normal other than for slight narrowing of the lumbosacral joint.
Orthopedic Consultation: The consultant felt that the patient had moderate osteoarthritis of multiple joints with radiculitis but that he was able to perform duties within reasonable limitations.
Course in the Hospital: The patient’s course in the hospital was uneventful except for occasional complaints relative to the neck pain.

Diagnosis:

1. 7280 Degenerative joint disease, multiple, due to unknown cause, moderate with radi-culitis, involving cervical and lumbosacral spine.
2. 6100 Hypertrophy, prostate, benign.
3. 3801 Astigmatism, mixed, bilateral.
Disposition: Patient to appear before a Medical Board.
8. Plaintiff was released from service on June 6,1955, because of the expiration of his category, not by reason of physical disability, while serving on active duty as a major.
9. On June 6, 1955, plaintiff filed a claim for disability compensation with the Veterans Administration. He listed the following claimed disabilities, with beginning dates as indicated:
Angina Pectoris Apr 1952
Slip Disk in the Spine (4) Sep 1954
Back injury caused by fall Sep 1954
Arthritis in spine 1948
Neuritis in arms and legs 1945
*482 10. On August 11, 1055, plaintiff was physically examined by the Veterans Administration in connection with his claim for disability compensation. The report on the X-rays of plaintiff’s vertebrae, dated August 12,1955, stated as follows:
CERVICAL VERTEBRAE: In the anteroposterior and lateral views reveals hypertrophic, osteoarthritic changes of the 5 th, 6th and 7th bodies with lipping and spurring and narrowing of the intervertebral spaces between these bodies. There is also straightening of the normal lower cervical curvature.
DORSAL VERTEBRAE: In the anteroposterior and lateral views reveals hypertrophic, osteoarthritic changes of the margins of the bodies, particularly in the lower dorsal region, without evidence of abnormality of the normal curvatures.
LUMBOSACRAL VERTEBRAE: In the anteropos-terior and lateral views, reveals minimal hypertrophic changes, particularly thickening of the paravertebral ligaments at their attachment to the bodies of the 2nd, 3rd, 4th and 5th. The lumbosacral articulation and the sacroiliac synchondroses appear normal, as does the curvatures.
An electrocardiogram taken on August 11, 1955, was reported to be “Normal.”
11. On August 31,1955, plaintiff was awarded service connection and disability compensation by the Veterans Administration at the rate of $109 per month, effective June 7, 1955, because of: Heart disease; osteoarthritis, entire spine; and generalized arteriosclerosis, disabling, to a combined degree of 60 percent. No compensation was allowed for neuritis, right leg and left shoulder, or for sinusitis, since these service-connected conditions were rated zero percent disabling from June 7,1955. The intervertebral disc syndrome claimed by the plaintiff was reported as not shown by the evidence of record.
12. On August 20, 1956, plaintiff was again examined by the Veterans Administration for rating purposes. The report of a special heart examination made on that date states, in pertinent part:
PHYSICAL EXAMINATION: Reveals a White male, 59 years of age, 6' tall, and weighing 190 lbs. He was *483 formerly a Service Manager with General Motors. Examination reveals no abnormal pulsations of the neck vessels. No apparent enlargement of the heart. The apex is not palpable. The left border is apparently to the right of the midclavicular line. There are no thrills. There are no murmurs. The heart tones are of good quality. There is a regular sinus rhythm. No premature contractions were noted. The rate was regular at 74 per minute. Blood pressure, 132/88. There was no ankle edema. The peripheral arteries are harder than normal and tortuous, principally noted in the brachials, which are visibly pulsating. He states that he can walk a block and a half without getting short of breath. At no time other than that described, does he have an an-ginal attack, which is not relieved immediately by Nitroglycerin.
DIAGNOSIS: Arteriosclerotic Heart Disease, Anginal Syndrome.
An electrocardiographic report made the same date stated as follows: “Muscle Tremor. Within normal limits.” The report of an orthopedic examination also made on August 20, 1956, is quoted as follows:
ORTHOPEDIC! EXAMINATION: Back: There is 20° limitation of motion of his back in flexion. There is restricted movements laterally to both right and left. Cervical Spine: There is limitation of motion laterally to both right and left about 10°. There is 10° limitation of motion in flexion. Extension normal. There are pains on deep palpation over the cervical, dorsal and lumbo-sacral spines. There is muscle spasm of the paravertebral muscles of the back and muscle spasm of the lumbar muscles of the back. Upper Extremities: Bight and Left Shoulders, Elbows, Wrists and Hands: No limitation of motion. However, he complains of arthritic pains in both right and left shoulders and right and left wrists and hands. Lower Extremities: Bight and Left Legs and Hips — no limitation of motion. Straight leg-raising, both right and left causes pains in his back with no limitation of motion. Patrick’s and Lasegue’s Signs negative. Bight and Left Knees, Ankles and Feet: No limitation of motion but there is arthritic swellings of both knees and both ankles. Conclusion: This veteran has Osteo-arthritis of the Spine and Multiple Joints, Chronic in Type, Moderate.
DIAGNOSIS: 1. Hypertrophic Arthritis of the Spine and Multiple Joints.
*484 13. On January 25, 1957, the Veterans Administration summarized plaintiff’s ratings as follows:
TO WHOM IT MAT CONCERN: C 18 953 104
Frank K. Johnston filed his original claim for compensation at the time of his separation from service, and this claim was received July 8, 1955, by the Veterans Administration. In the initial rating of August 24, 1955, the following determination was made:
1. Incurred PL 28/82 VR 1(a) Pt 1 Par 1(a) 30% from 6-7-55 (** 40% from 5-21-56 **)
7005-420 ANGINA PECTORIS
5003 30% from 6-7-55
OSTEO ARTHRITIS, ENTIRE SPINE 20% from 6-7-55
GENERALIZED ARTERIOSCLEROSIS
1. Incurred W II VR 1 (a) Pt 1 Par 1(a) 0% from 6-7-55
NEURITIS, RIGHT LEG AND LEFT SHOULDER
1. Incurred PTE VR 1(a) Pt 1 Par 1(a) 0% from 6-7-55
SINUSITIS
36. INTERVERTEBRAL DISC SYNDROME claimed by veteran not shown by the evidence of record.
COMB: 60% from 6-7-55 (** 100% from 5-21-56 with Individual Unemployability
NO COMBAT
In rating of October 3, 1955, the previous rating was confirmed and continued.
In rating of September 24, 1956, rating was increased as shown, by asterisks in parenthesis above. Veteran is in receipt of disability compensation in the amount of $202.00 monthly.
14. By application dated November 22, 1955, plaintiff requested the Army Board for Correction of Military Records to correct his military records to show that he had been retired for physical disability as of June 6, 1955. The Correction Board forwarded the complete military file and Veterans Administration file to the Physical Standards Division, Office of the Surgeon General, requesting an opinion concerning plaintiff’s eligibility for the requested retirement. The Surgeon General replied to the request on March 26,1956, as follows:
*485 1. The attached records, including the Veterans Administration rating sheet, in the case of Frank K. Johnston, 0480851, have been carefully reviewed.
2. The records indicate that at the time of his separation from the service this officer had arthritis involving the cervical, thoracic, and lumbar spine resulting in moderate limitation of the neck, thoracic spine, shoulders, and hips. In addition, slight benign hypertrophy of the prostate was found on digital examination, and there was some evidence to substantiate mild episodes of anginal pectoris. While these conditions would impose limitation of duty assignment, it was not believed that they were of such degree as to preclude further military service commensurate with a physical profile of P-3, U-3.
3. Based upon the evidence of record, the opinion is expressed that at the time this officer was separated from the service he had several physical defects which although rateable under the Veterans Administration Schedule for Bating Disabilities, were not of such nature or degree as to warrant retirement because of physical disability under the laws, rules, regulations, or policies then in effect.
15. By communication dated May 8,1956, plaintiff was advised that his application for correction of his military records had been denied because of insufficient evidence of probable material error or injustice.
16. On January 3, 1957, plaintiff again requested correction of his records to show entitlement to physical disability retirement. The Correction Board again sought the opinion of the Surgeon General. On March 1, 1957, the Surgeon General affirmed his prior opinion of March 26, 1956.
17. On August 28, 1957, plaintiff was given a hearing before the Army Board for Correction of Military Becords at which time he was represented by Thomas H. King and C. S. Stephenson, Bear Admiral, USN (Bet.), as counsel. Plaintiff appeared at the hearing and testified in his own behalf.
18. On September 15,1957, the Correction Board made its findings, conclusions, and recommendations to the Secretary of the Army, quoted, in pertinent part, as follows:

THE BOARD FINDS:

1. That the applicant has exhausted all administrative remedies afforded him by existing law or regulations.
*486 2. That it incorporates and adopts by this reference so much of the Case Summary, Exhibit “C” above, as pertains to the factual showing of the Department of the Army records which generally reflect:
a. that the applicant entered on extended active duty on 1 July 1942, at the age of 45 years, with a waiver for obesity;
b. that an electrocardiogram made during an annual physical examination of the applicant on 24 November 1954 was interpreted as being normal, and he was considered to be qualified for general military service ;
c. that the applicant was hospitalized on 27 April 1955 due to generalized body pain; that on 23 May 1955 a Medical Board found that he had (1) degenerative joint disease, multiple, due to unknown cause, moderate, with radiculitis, involving the cervical and lumbosacral spine, (2) hypertrophy, prostate, benign, and (3) astigmatism, mixed, bilateral, all of which were incurred in line of duty but were not disabling, and recommended his return to duty for general service; and
d. that the applicant was relieved from active duty effective 6 June 1955 due to the expiration of his category, not by reason of physical disability.
3. That the Veterans Administration rated the applicant 60 per cent disabled as of 7 June 1955 because of angina pectoris, osteoarthritis of the entire spine, and generalized arteriosclerosis, and rated him 100 per cent disabled effective 21 May 1956, subject to annual review, by reason of individual unemployability.
4. That the Surgeon General’s Office, after review of the applicant’s records, expressed the opinion on 26 March 1956 and 1 March 1957 that the applicant’s physical defects, although ratable under the Veterans Administration Schedule for Bating Disabilities, were not of such nature or degree as to have warranted retirement for physical disability under the laws, rules, regulations, or policies in effect at the time of his relief from active duty.

THE BOARD CONCLUDES:

1. That review of the applicant’s case by competent Ai'my medical personnel both prior and subsequent to his relief from active duty failed to disclose sufficient basis for retirement by reason of physical disability.
2. That while it is cognizant of the disability ratings awarded the applicant by the Veterans Administration, *487 that agency, unlike the Department of the Army, is not required by law to determine whether or not his physical defects at the time of his relief from active duty were of the degree of severity which would have rendered him physically unfit to perform the duties of his office, rank, or grade, but may award compensation on the basis that a disability for industrial purposes exists.
3. That in consideration of the foregoing, there is no material error or injustice in the applicant’s case.

THE BOARD RECOMMENDS:

That in the case of FRANK K. JOHNSTON, his application for correction of military records, dated 28 November 1955, and the request for reconsideration thereof, dated 3 January 1957, be denied.
19. On December 13, 1957, the Secretary of the Army approved the findings, conclusions, and recommendations of the Army Board for Correction of Military Records, and denied plaintiff’s request for correction of his military records.
20. Department of the Army Special [Regulations No. 40-120-1, dated October 9, 1953, entitled “Medical Standards of Fitness and Unfitness for Retention pn Active Duty,” were in force and effect at all times material herein, and provided, in pertinent part, as follows:
1. Purpose of standards. — a. These policies contain the medical standards stated by The Surgeon General as to fitness or unfitness for retention on active duty. These standards will be utilized by all medical personnel concerned when considering members for disability separation or retirement under the provisions of AR-40-680, SR 600-450-5, or SR 600^150-10. AR, 15-160 prescribes that the members of the Army Physical Review Council and the Army Physical Disability Appeal Board when determining the disposition of physical evaluation board cases will be guided by the medical standards as to fitness or unfitness stated by The Surgeon General.
b. The purpose of these medical standards as to fitness and unfitness is to secure the maximum efficiency and uniformity in the determination of disabilities which warrant disability separation or retirement or warrant retention in the military service. Medical examiners should consider these standards as a guide with discretion and not construe them too strictly or arbitrarily, the object being to aid in the determination of whether or not an individual is qualified for further military *488 service. Every case must be considered on its individual merits and the decision of fitness or unfitness based on a consideration of pertinent directives and accepted medical principles.
2. Evaluation of physical defects. — a. In evaluating physical disabilities, due regard will be given to the physical standards set forth in AE 40-100, AE 40-105, and AE 40-115. However, these directives will not be as strictly interpreted as for appointment or entrance on active duty (par. 4, SE 600-450-5). Appropriate consideration will be given to a record of satisfactory performance of general service over a reasonable period of time, and the individual’s age, grade, branch of service, and normal duties. A finding of physical fitness is appropriate when any physical disability which may be present will not interfei'e with satisfactory performance of duty, or is not subject to complications or serious aggravation by reason of continued military duty. No individual will be found fit for service unless he is physically capable of performing duties of his office, rank, grade, or rating.
* >1-
c. Consideration should also be given to the provisions of SE 600-145-15, in appropriate cases, to assure the retention on active duty of individuals who desire retention and who can be expected to perform satisfactory service based upon experience and/or potential qualifications which are of value to the service.
# ❖ # * *
5. Application of medical standards. — These medical standards of fitness and unfitness apply to all military personnel of the Army. An individual who is otherwise scheduled for retirement or separation is not automatically found unfit if it is determined that he has a ratable disability. Such an individual is found to be unfit only when it is determined that his disability is of such a nature that if he were not retired or separated, he could not perform the duties commensurate with his age, grade, branch, and normal duties. Each individual will be given a final-type physical examination prior to date of separation or retirement. If medical conditions are disclosed which cast doubt upon fitness for duty, the case should be referred to a medical board by the examining physician. It is not necessary that the member be hospitalized for this purpose, nor is it necessary that the complete medical records be obtained, unless it is sub *489 sequently determined that physical evaluation board proceedings are indicated.
HEAET AND VASCULAR SYSTEM
33. Angina pectoris. — Angina pectoris when present in a mild degree is not considered to render an individual unfit.
*****
37. Arteriosclerosis. — Arteriosclerosis, per se, even though severe, is rarely considered to render an individual unfit.
* sí: ‡ ❖ ❖
SPINE AND PELVIS, INCLUDING SACROILIAC AND LUMBO-SACRAL JOINTS
65. Arthritis. — a. Arthritis, if relatively asymptomatic, is usually not considered to render an individual unfit.
b. Osteoarthritis originating prior to entry on active duty, is considered to have been permanently aggravated by the service only when there is a history of some definite pertinent local injury or an abrupt and sudden pathological development during active service or where there has been undue exertion, exposure, or other adverse influences of the military service, such that the progression of the disease has been definitely permanently accelerated. If the osteoarthritis originated in the service, it must be at least moderate in degree, both objectively and subjectively, to be considered as rendering the individual unfit.
21. Plaintiff has been in receipt of disability compensation from the Veterans Administration at the rate of $202 per month from May 21,1956, based upon the service-connected conditions listed in finding 11 and the assignment by the Veterans Administration of a 100 percent rating because of “individual unemployability.”
22. The evidence of record does not establish that the Correction Board or the Secretary of the Army acted arbitrarily or capriciously in denying plaintiff’s application for correction of his military records. It further appears that the record contains substantial evidence to support the ultimate conclusion of the Army Board for Correction of Military Records as approved by the Secretary of the Army.
*490 CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.

 Army Special Regulations No. 40-120-1, paragraph 65(b).

 Id., paragraph 33.