James D. STEPHENS

v.

The UNITED STATES.

No. 189-60.

United States Court of Claims.

Feb. 18, 1966.

Joe Hobson, Prestonburg, Ky., attorney of record, for plaintiff.

Katherine H. Johnson, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

Plaintiff, a former Army Reserve officer, sues to recover disability retirement pay commencing either from the date of his release from active duty in May of 1954, or from the date he suffered a myocardial infarction while on a 15-day active Reserve tour of duty in August of 1957.

Plaintiff was appointed 2nd Lieutenant, ORC, on September 8, 1937, and served on active duty from April 21, 1941 to April 23, 1946, successively as a 1st Lieutenant, Captain, and Major. From April 24 to October 13, 1946, his status was that of a Major in the Reserves. On October 14, 1946, he was recalled to active duty in the grade of Major, and subsequently was promoted to Lieutenant Colonel. On May 31, 1954, while serving as Lieutenant Colonel, he was relieved from active duty by reason of denial of category renewal, and according to the Army records, not by reason of physical disability. Plaintiff then received a commission as Major in the Army Reserve, in which capacity he served until he was honorably discharged on April 28, 1960, due to physical disqualification.

In December of 1943, while on active duty, plaintiff experienced the discomforting effects of sacroiliac strain, the first important instance in a series of various illnesses which have plagued him intermittently to the present date. In 1948 further strains of the sacroiliac joints were evidenced and plaintiff was treated, as before, by diathermy. Later in that year he was hospitalized for "right upper quadrant tenderness," and diagnosed as having chronic cholecystitis or inflammation of the gall bladder. In November of 1950 he was hospitalized for bursitis of the left shoulder and in May of 1951 for infectious hepatitis and jaundice. At the end of May 1951, his gall bladder was surgically removed in Okinawa. Later in the same year he complained of a certain amount of chest pain. In February of 1953, he was again hospitalized with bursitis. In January of 1954, he was transferred at his own request from an infantry training task to an administrative job, and in March of that year he received outpatient treatment for headaches and dizzy spells. Two electrocardiograms then administered proved to be negative. In April 1954 plaintiff was scheduled for release from active duty, due to change of category. His request for a continuation of active duty was denied, and he was consequently released as anticipated on May 31, 1954.

A final type physical examination conducted at Camp Polk, Louisiana, on May 25, 1954, to determine plaintiff's physical qualification for release, found him to be fit and qualified for general military service, with a physical profile of P111111.[1] The Report of Medical History accompanying the examination took note of plaintiff's past ailments and complaints, including his gall bladder removal, back pains, stomach and liver disorders, headaches and dizziness, chest pains, bursitis, and sacroiliac strain.

Upon his release from active duty, plaintiff was reassigned to the Reserves and obtained civilian employment of an administrative nature. He continued, as he had before separation from active military service, to complain of various stomach and back disorders. From March 3 to March 7, 1955, he was hospitalized, and an examination disclosed a duodenal ulcer and pancreatitis.

On April 1, 1955, plaintiff tried to enlist in the Regular Army, but was found physically unfit for entry on duty as an enlisted man, with a physical profile of P411121, temporary. From August 6 to August 20, 1955, he was ordered to active duty as a Reserve officer, and in connection with that tour of duty, he

1. The six numerals represent: general physical condition; upper extremities; lower extremities; hearing; eyes, and neuropsychiatry. The ratings under each are from 1 to 4, 1 indicating no defect, 4 indicating nonacceptable defect, and 2 and 3 being between these extremes.

represented that he considered himself sound, well, and fit for full military duty, citing the favorable physical rating he had received one year earlier upon his separation from active duty. On May 9, 1955, the Veterans' Administration rated plaintiff 10 percent disabled, effective June 1, 1954, as a result of the residual effects of his gall bladder removal. No disability rating was awarded on account of the ulcer or pancreatitis. On January 25, 1956, plaintiff again tried to enlist in the Regular Army and was once more found unfit for entry on regular military duty, with a profile of P411111, permanent, due to chronic pancreatitis.

Three days later, on January 28, 1956, plaintiff applied to the Army's Board for Correction of Military Records, claiming that he should have been found physically disabled at the time of his release from active duty on May 31, 1954. In his application, plaintiff based his claim to disability principally on his gall bladder removal and post-operative pains and on his March 1955 ulcer and pancreatitis, alleging that the latter existed prior to separation. Plaintiff stated, moreover, that he had orally requested a physical evaluation board at the time of separation, but that defendant's officials had deemed this action inadvisable.

On March 19, 1956, the Correction Board referred the case to the Surgeon General's Office for comment and opinion as to whether plaintiff's physical condition upon release from active duty was such as to require retirement for physical disability. In reply, the Surgeon General stated that there could, of course, be no doubt as to the existence of gall bladder disease in the case but that the records did not substantiate the presence of an ulcer or pancreatitis at the time of separation. Notice was taken of the discomforts that plaintiff suffered subsequent to his gall bladder operation, but it was pointed out that there was no indication that he sought aid or relief at any Army medical facility for these symptoms. In conclusion, the Surgeon General expressed the opinion that at the time plaintiff was released from active serv-ice, the records indicated that he had no condition which would have warranted his retirement by reason of physical disability under the pertinent statutes and regulations then in force. Plaintiff's request for a hearing was denied and the Correction Board refused to alter his records.

Plaintiff served on his normal annual active Reserve duty from June 17 to July 1, 1956, but the Chief of Medical Service determined on June 29, 1956, that he could do no duty. On July 20, 1956, plaintiff requested the Army Correction Board to reconsider his application in light of this latest development and urged the Board to consider his unsuccessful attempts to enlist in the Regular Army and his 10 percent disability rating from the Veterans' Administration. However, on July 24, 1956, 4 days after filing the request, plaintiff completed an Army Reserve Qualification and Availability Questionnaire in which he indicated his availability for active military duty. No mention was made of any physical defect which would have precluded such service. On December 17, 1956, after a review of the additional evidence submitted, the Correction Board denied plaintiff's request for reconsideration of the case.

Shortly after the second denial of relief by the Correction Board, plaintiff went on a short tour of duty to attend the National Resources Conference, certifying at the time his fitness for active duty. On July 20, 1957, plaintiff entered his normal 15-day active Reserve tour of duty at Fort Meade, Maryland, after once more certifying his physical qualification. On August 2, 1957, while performing this tour of duty, plaintiff sustained a myocardial infarction for which he was hospitalized in Army facilities until October 4, 1957. (A more detailed description of this illness and its relevant consequences will be found later in this opinion, in conjunction with the second court of plaintiff's claim.) On September 28, 1957, while a patient at the Walter Reed Army Hospital, plaintiff filed a third application with the Board for

Correction of Military Records, again alleging his physical disqualification as of May 31, 1954. All of plaintiff's major illnesses were listed in the request, with particular emphasis laid on his 1951 gall bladder removal, his 1955 pancreatitis, and his 1957 myocardial infarction. On April 28, 1958, plaintiff was notified that his request for reconsideration had been denied because the Board, after again considering the records of the case, including those relevant to his hospitalization following the myocardial infarction, had found no basis for a formal hearing or for an alteration of the records.

Thus, three times plaintiff applied to the Army Board for Correction of Military Records, requesting that his records be changed to show his physical disability and consequent entitlement to disability retirement pay as of May 31, 1954, the date of his separation from active military service. Three times that administrative body refused to grant the relief requested. Plaintiff, of course, attacks the decisions of the Army as arbitrary and unjustified by the medical records and evidence in the case, and asserts that if a physical evaluation board had been convened upon his oral request and had competently and comprehensively examined him just prior to his release from active duty, it would have found him physically disqualified to perform general military service at that time.

This court has held on many occasions that it has no power to review the decisions of the Secretary of one of the military departments or his authorized representatives in such a case unless the petitioner shows by cogent and clearly convincing evidence that such determinations are arbitrary, capricious, or not supported by substantial evidence. Furlong v. United States, 153 Ct.Cl. 557 (1961); Wales v. United States, 130 F. Supp. 900, 132 Ct.Cl. 765 (1955); Boland v. United States, 169 Ct.Cl. 145 (1965). The court will not substitute its judgment for that of the armed services in determining general fitness for military duty. Furlong v. United States, supra; Johnson v. United States, 149 F.Supp. 648, 138 Ct.Cl. 81 (1957), cert. denied,

355 U.S. 850, 78 S.Ct. 69, 2 L.Ed.2d 54 (1957); Woodford v. United States, 151 F.Supp. 925, 138 Ct.Cl. 228 (1957), cert. denied, 355 U.S. 861, 78 S.Ct. 94, 2 L.Ed. 2d 68 (1957).

In the case at hand, plaintiff on three occasions requested the Army Board for Correction of Military Records to alter his records to reflect physical disability as of May 31, 1954. In considering each of these applications, that body had before it plaintiff's entire relevant military medical history, including his various hospital clinical records and the report of his separation physical examination. Also before the Board's attention were numerous affidavits and records relating to plaintiff's post-separation illnesses and discomfort. After reviewing all the evidence presented and taking into account the memorandum opinion prepared upon request by the Surgeon General's Office, the Board reached the considered opinion that plaintiff had not established sufficient basis to justify a formal hearing or further action in the case.

■ Plaintiff attacks the decision of the Board as untenable and contrary to the evidence on the grounds that he was not referred to a physical evaluation board upon release, that he was rated 10 percent disabled by the Veterans'. Administration as of June 1, 1954, that he was subsequently found unfit for entry on active duty as an enlisted man, and that he suffered numerous and allegedly related ailments after separation. We are unable to agree with plaintiff's contention that the recited facts establish that the Army acted arbitrarily in his case. First of all, the nature, number, duration, and severity of plaintiff's disabilities while in service, as disclosed by his official medical records and the results of his final type physical examination, were not of such obvious character as to require an evaluation in May of 1954 by a physical evaluation board to determine his physical fitness to perform his duties. Compare Lawler v. United States, 169 Ct.Cl. 644 (1965). Secondly, the fact that plaintiff was denied enlistment in the Regular Army subsequent to his release from active duty as an officer is of

itself immaterial, for the standards imposed for original appointment are more stringent than those for retention on active duty. Towell v. United States, 150 Ct.Cl. 422 (1960); Furlong v. United States, supra. The fact that the Veterans Administration gave plaintiff a disability rating of 10 percent does not entitle him to recover, because the Army, in making its determination as to whether an officer is entitled to disability retirement pay, is not bound by action taken by the Administration operating under a separate statute. See Holliday v. United States, 128 Ct.Cl. 647 (1954); Johnson v. United States, supra; Wales v. United States, supra. In any event, 10 U.S.C. § 1201 expressly states that a disability rating must be at least 30 percent to be of any relevance. Finally, the evidence brought forward by plaintiff concerning his post-separation illnesses, particularly his 1955 pancreatitis and his 1957 heart condition, is not sufficient when considered in connection with all the evidence before the Correction Board to establish that the Board's action was arbitrary or capricious.

Although plaintiff's counsel has eloquently pleaded his cause and has introduced a great deal of documentary evidence to confirm the fact that plaintiff suffered and complained of several illnesses both before and after his release from active duty, plaintiff has not sustained the substantial burden of showing that the Secretary of the Army, through his designated representatives, violated his legislative mandate by arbitrarily denying to plaintiff the disability retirement pay he now claims. The record in the case does not warrant the conclusion that the personnel involved ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them, or that in any other manner they failed to discharge their designated duties. It must be noted that not all ailments or disabilities are incapacitating to the extent of justifying retirement by reason of physical disqualification. Wales v. United States, supra.

In reviewing plaintiff's entire military records and the reports of his post-separation illnesses insofar as they related to his condition while in active service, the Army reached the reasonable conclusion that plaintiff was physically qualified for duty at the time of his release. Such a determination of physical fitness is to be made in the first instance by the Army and not by the court; and as noted above, it will be upheld unless affirmatively shown to be arbitrary, capricious, unsupported by substantial evidence, or in noncompliance with applicable laws and regulations. Johnston v. United States, 157 Ct.Cl. 474 (1962); Towell v. United States, supra; Furlong v. United States, supra; Wales v. United States, supra; Woodford v. United States, supra. The decision of the Correction Board, affirming the prior official determination of the Army that plaintiff was physically fit and qualified to perform the duties of his office, grade, rank, or rating at the date of his release from active duty on May 31, 1954, is adequately supported by the medical records in the case.

Plaintiff's second claim to relief is based on the fact that he sustained a heart attack while on a short tour of active Reserve duty. 10 U.S.C. § 1204 provides for disability retirement in the case of members of the armed services who have served on active duty for a period of 30 days or less (as compared to 10 U.S.C. § 1201 which concerns members on extended tours of active service). Section 1204, however, requires that the physical disability complained of must have resulted from an "injury." Plaintiff, consequently, alleges that the myocardial infarction he sustained on August 2, 1957, while on a 15-day tour of active duty was indeed such an "injury." Defendant, on the other hand, maintains that a myocardial infarction is a "disease," and not an "injury" as required by the statute.

This is not the first time that the particular issue has been presented before the court. In Gwin v. United States, 137 F.Supp. 737, 133 Ct.Cl. 749 (1956),

we held as a matter of common parlance and of statutory interpretation that a myocardial infarction is a "disease," and not of itself an "injury" within the purview of 10 U.S.C. § 1204. See also Rae v. United States, 159 Ct.Cl. 160 (1962). There are no convincing factors which would induce us to reach a contrary conclusion in the present case. While on his scheduled 15-day tour of duty plaintiff exerted himself by playing tennis and by climbing stairs in exceedingly hot weather. The clinical abstract prepared by a Medical Board convened at Walter Reed Hospital on October 1, 1957, where plaintiff was recuperating from the illness in question, indicated that his myocardial infarction was a common manifestation of a slowly developing arteriosclerotic condition, typical of human males and commencing at an early age. The Board was of the opinion that the particular physical activities precipitating the infarction were not of an unusual nature, could not in themselves have been responsible for causing an acute coronary occlusion and that the infarction was probably one of the ordinary instances and complications occurring in the course of a coronary disease. The Board also stated that plaintiff's diagnosed arteriosclerotic condition probably would not have been recognizable upon normal examination as a clinical coronary disease prior to the infarction episode, although it admitted that this conclusion was somewhat speculative in view of plaintiff's past history of sundry diseases, illnesses, and complaints. The evidence does not show that plaintiff suffered any independent blow or injury while on this active duty tour which would have precipitated the infarction.

In summary, the defendant's determination that the myocardial infarction sustained by plaintiff on August 2, 1957, was a manifestation of a pre-existing arteriosclerotic heart disease rather than an "injury" has not been shown to be arbitrary, capricious, or unsupported by substantial evidence.

■ Plaintiff makes an argument in his brief to the effect that the 1957 tour of active duty during which he suffered his myocardial infarction extended in fact for more than 30 days. It is contended, first of all, that since he was hospitalized until October 4, 1957, and received active duty pay during this period, his tour of duty can be said to have actually lasted from July 20, 1957 to October 4, 1957, and not merely to August 5, 1957, as scheduled. As was pointed out in the Gwin case, which is strikingly similar to the present case on its facts, the legislative history of the Career Compensation Act of 1949 (now codified as 10 U.S.C. § 1201 et seq.) shows that Congress did not intend to award disability retirement to persons who were disabled by disease while serving on short tours of active duty. Hence, to permit an officer who has been hospitalized by reason of disease while on a 15-day tour of duty to automatically add the period of his hospitalization to that of his active duty as originally scheduled for the purpose of qualifying for disability retirement would in effect ignore the carefully worded distinction which Congress drew between Sections 1201 and 1204 of Title 10. Gwin v. United States, supra. The fact that Army policy provided for the payment of active duty pay during periods of hospitalization does not alter this result. Plaintiff would, in any case, still be considered to have served on a 15-day tour of duty for purposes of the statute, regardless of the extent or duration of his hospitalization.

■ In connection with his hospitalization, plaintiff also contends that he has remained on active duty status continuously from July 20, 1957, until the filing of the petition here, on the grounds that he was never issued formal orders rescinding his prior orders and specifically relieving him from active duty. Plaintiff was processed under the provisions of Section 15 of AR 40–212 (which deals with procedures following medical board action in the case of reservists on active duty training) and was eventually released from the hospital and returned to his home. Plaintiff has pointed to no authority, and we know of none, to substantiate the legal proposition that a formal order, other than the procedure

outlined in the above regulation, specifically relieving the member from active duty, is required to be issued upon discharge. Plaintiff was separated in accordance with the applicable Army regulations, and there is no merit in the contention that he has remained on active duty status continuously since July 20, 1957.

In view of our conclusions, stated above, plaintiff is not entitled to recover and his petition is dismissed.