Dr. William G. PATTERSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–472C.

United States Court of Federal Claims.

Aug. 11, 1999.

Chuck R. Purdue, Augusta, Georgia.

Elizabeth M. Hosford, appeared for defendant with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director James M. Kinsella, United States Department of Justice, Washington, D.C.

## OPINION

BRUGGINK, Judge.

This is an appeal from a denial by the Army Board for Correction of Military Records ("ABCMR" or "Board") of plaintiff's request that his discharge status be changed to a medical disability retirement. The matter is pending on the parties' cross-motions for summary judgment. The primary issue is whether plaintiff's disability was incurred during, or aggravated by, his service in the armed forces. Oral argument was held on August 4, 1999. For the reasons set out below, defendant's motion is granted.

## BACKGROUND

Plaintiff was a dentist in the United States Army Reserve. In April, 1989, he was fulfilling his annual training commitment at Fort Leonard Wood, Missouri. While on duty on April 2, he went to the emergency room, complaining of acid reflux and tenderness in the chest. He underwent a stress test with an EKG monitor. The EKG reading had some slight abnormality. He was diagnosed at that time with probable atherosclerotic heart disease. It was recommended that he undergo a heart catheterization through a private physician to rule out any underlying disease.

It is undisputed that Dr. Patterson underwent a catheterization in the Army hospital, and that it revealed "high grade stenosis of the obtuse marginal branch and right coronary artery branch." He now asserts that the catheterization was involuntary. While

he was on the catheterization table, "he developed unstable angina that was refractory to medical therapy. It was determined that he would need emergent per cutaneous transluminal coronary angioplasty." During arteriography, however, "he developed asystole and required cardiopulmonary resuscitation. He was taken ... to the Operating Room while cardiopulmonary resuscitation was being performed for emergent coronary artery bypass graft." Three bypass grafts were performed. The medical notes of the bypass procedure contains the following: "Attention was first turned to the left anterior descending. This was bypassed because it was felt that there was a chance that there was a dissection in the left main coronary, even though it had not been abnormal on the catheterization study."

After surgery, his prognosis was "grim," and it was judged he might not survive surgery. In short, Dr. Patterson nearly died. Steps were taken almost immediately to convene a Physical Evaluation Board ("PEB") to consider retiring him on disability. For reasons not clear in the record, such a board was not convened, however.

Fortunately, he did survive, although he suffered impairments from which he has not fully recovered. He reported in September 1989 that he had hearing loss, gastric distress, and rib and sternum pain. The results of three post-surgery examinations are in the record. On May 16, 1993, plaintiff reported that he is "presently [in] good health," although he was undergoing cardiac rehabilitation. An examination that date resulted in an assessment of his condition in terms of various physical attributes. He received a "1", or highest rating, in four of the six categories. He received a "3", denoting restrictions on assignment because of limitations of physical capacity or stamina, and a "2" on eyesight. He had received a similar rating in the physical capacity category in 1991. It was noted at that time that he could "exercise at his own pace," and that his profile did not interfere with his primary responsibilities.

Plaintiff applied to the ABCMR on February 2, 1994, for a medical disability retirement with a 100% rating, asserting that he

had been injured during the angioplasty procedure. He did not specify the precise nature of the injury and resulting disabilities, however. In a cover letter for the application, his attorney states that he had "significant coronary artery disease, [but] the injury he sustained as a result of both the cardiac catheterization and the angioplasty greatly aggravated his heart condition and lead to strokes." It was also asserted that these procedures lead to the cardiac arrest and some subsequent brain damage.

Prior to its resolution of the petition, the Board sought the input of the Surgeon General of the Army's Cardiology and Neurological Consultants. That office advised that the plaintiff did not meet the medical retention standards at the time of his retirement in 1993, nor at the time of his surgery in 1989. The Board also was advised by the Physical Disability Agency ("PDA") that the plaintiff had a pre-existing coronary disease; that the cardiac arrest condition was the main result of his prior existing heart disease and not the proximate result of the catheterization; and that no negligent acts were committed by Army medical personnel. The PDA advised that in its view the legal standards for compensation had not been met.

The ABCMR decided that plaintiff had not established that his infirmities, even if disabling, were the proximate result of performing duty. *See* Army Regulation ("AR") 635–40, § 8–2(a). The Board found that plaintiff's "high-grade stenosis of the circumflex artery and the right coronary artery ... existed prior to his entry on active duty and was not the proximate result of his performing military duty." The Board viewed the catheterization and angioplasty as "[s]tandard in-service medical and surgical treatment reducing the effect" of what it found was a pre-existing disease condition-arteriosclerosis. The Board further found no evidence that "the catheterization process was the main cause of the cardiac arrest condition," that the result was "outside the normally accepted inherent risks of such a procedure," or that there were "any negligent acts committed by medical personnel that caused this arrest."

This action was filed on June 2, 1998.

## DISCUSSION

 Decisions regarding entitlement to disability retirement are not considered de novo by this court. The agency action, in this case embodied in the decision of the ABCMR, is given deference. The role of the court is not to determine whether in fact the service person's unfitness, if any, at the time of release was service connected, but whether the board's determination that it was not is contrary to law. *See Johnston v. United States,* 157 Ct.Cl. 474, 478, 1962 WL 9299 (1962). The board's decision can be overturned only on a showing that it was "illegal because it is was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced." *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804 (1979).

As more fully amplified at oral argument, plaintiff advances four independent arguments: 1) it was error not to convene a PEB prior to denying his application for disability retirement; 2) the catheterization was performed over plaintiff's objection, and hence all the results of the catheterization, were per se "service connected;" 3) it was error for the Board not to find that the accidental dissection of the left main coronary artery aggravated the pre-existing heart condition; and 4) the Board erred as a matter of law in not concluding that plaintiff's heart attack and related neurological injuries are the "unexpected adverse effect" of the catheterization, independent of any possible accidental or negligent dissection. The court disagrees on all four counts.

 Plaintiff argues that it was legal error to deny him disability retirement without convening a PEB. Plaintiff points to no statute or regulation to support the proposition that it was error not to convene a PEB.

It may be true, as plaintiff asserts, that a Medical Evaluation Board and then a PEB are normally convened before a service person is discharged on disability retirement under 10 U.S.C. § 1201 (1994). And it is true, as the Board stated, that "there must be a determination by a PEB that the unfitting condition was the proximate result of performing duty" in the case of service persons performing duty for less than a thirty-day period. AR 635–40. The fact that the military will not grant a disability retirement without a PEB does not, however, mean that it cannot deny one without a PEB. Not all military regulations are for the benefit of the service person. *See Allgood v. Kenan,* 470 F.2d 1071, 1073 (9th Cir.1972). Moreover, as defendant points out, the ABCMR can make disability determinations in the first instance. *See Sawyer v. United States,* 930 F.2d 1577, 1581 (Fed.Cir.1991). The mere fact, therefore, that at a time when it appeared plaintiff's prospects were "grim" a PEB was contemplated, does not demonstrate any legal error.[1]

 Plaintiff alleges, with no citation to the record put before the ABCMR, that the catheterization subsequently performed in the Army hospital on April 13, 1989, was performed involuntarily. This allegation was not made in counsel's argument to the ABCMR. Support in the present record appears for the first time in Col. Patterson's own affidavit and that of Celeste Ackerman, a retired nurse who attended his catheterization.[2] There is no explanation offered as to why the alleged involuntariness of the procedures could not have been argued to the ABCMR. That issue is therefore waived. *See Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984 (1979).

More importantly, this assertion has no direct bearing on the question of whether

---

1. The court notes, moreover, that plaintiff had the right . to, and did, supplement the record before the ABCMR, and could have, but did not, ask for a personal appearance before the Board.

2. The record the court reviews is normally the one considered by the board. *Long v. United States,* 12 Cl.Ct. 174, 175 (1987). Although the *Long* decision recognized that supplementation of the administrative record is viewed more fa-

vorably in medical disability cases, it clearly suggests that the rationale for doing so is because medical conditions may change, thus revealing relevant evidence that is "newly discovered or was unavailable during the administrative review." *Id.* at 176 n. 1. The affidavits submitted by plaintiff do not contain the type of evidenced considered under this exception.

plaintiff's disability was service connected. Stripped to its essentials, plaintiff is arguing that, irrespective of his pre-existing condition, the fact that the Army performed these medical procedures is enough to show a service connection. We disagree. Assuming plaintiff was ordered to undergo catheterization over his objection, that fact alone would not make the result of treatment "service connected." In other words, unless the Board's decision—that his disability resulted from a pre-existing, non-service-connected condition, and was not a result of duty-related aggravation of that pre-existing condition—is reversible for other reasons, it is not reversible solely on that basis.

■ The ABCMR was not presented with the precise allegation that the catheter "operator ... misguided a catheter and dissected Dr. Patterson's left main coronary artery which caused a cardiac arrest." Complaint at 3. It apparently understood the factual assertion, because it held, nevertheless, that there were "no negligent acts committed by medical personnel that caused this arrest." On appeal, plaintiff contends that it is unnecessary to make a finding of negligence to award him disability compensation. He contends that the Board's error lies in its failure to find, first, as a matter of fact that the artery was accidentally dissected and that this aggravated the pre-existing condition, leading to the cardiac arrest; and second, to hold as a matter of law that, if this happened, it was not an "[u]nexpected adverse effect, over and above known hazards" implicit in catheterization. *See* AR 635–40.

Plaintiff contends that the record already in place is sufficient to demonstrate that the fact finding was in error.[3] Plaintiff does not offer new information to support this argument. Instead, he relies on two notations in the medical record before the ABCMR. The first is a reference in the operation report to "significant coagulapathy" and "significant hemorrhage" from the sternum, particularly the left part of the manubrium. There was reference to a bleeding vessel. In addition

the operating report reflects that "the left anterior descending ... was bypassed because it was felt that there was a chance that there was a dissection in the left main coronary, even though it had not been abnormal on the catheterization study."

From this plaintiff concludes that there was massive bleeding and that there is a "high probability" that there was accidental injury to the left main coronary because of the catheterization. If this indeed occurred, then, plaintiff argues, this was an unexpected adverse result within the meaning of the applicable regulation. The Board rejected this analysis, although it is not clear whether it concluded that, even if things happened as plaintiff suggests, it was not an unexpected adverse result, i.e., it is one of the risks inherent in catheterization that accidental dissections will occur, and/or that an accidental dissection did not occur. The Board's summary finding that the cardiac heart arrest was the "main result of his prior existing heart disease and nothing that occurred during his active duty period can be said to have been the main cause of his arrest and permanent impairment," suggests that the Board concluded that, if there was a dissection, it was not an aggravating cause of his impairment. Whatever happened after he was diagnosed with arteriosclerosis was of insufficient independence in terms of causation to break, or add significantly to, the link between the cardiac arrest and the pre-existing condition.

Plaintiff offers no real basis for the court to disagree with this conclusion, or to find that it is arbitrary, capricious, or not in accordance with law. The regulation itself does not force a conclusion that bleeding resulting from an accidental dissection of a vessel is per se an aggravating cause. Nor does the court have any basis for rejecting the Board's implicit finding that the possible dissection did not contribute sufficiently to the cardiac arrest. Reversing on that basis would require substantially greater certainty than that afforded by the record.

---

3. In neither of the affidavits accompanying the complaint is there any additional support for the statement in the complaint that "[a]s a result of the catheterization, Dr. Patterson suffered a

heart attack and stroke, and had temporary and permanent neurological damage, [and] damage to his heart."

Plaintiff argues in the alternative that, even if there was no dissection, negligent or accidental, cardiac arrest and neurological damage are not an "expected" result of catheterization or angioplasty, thus, by definition they are "unexpected," and make the consequent disability service connected. The Board concluded that "there is no evidence that [cardiac arrest condition] is outside the normally accepted inherent risks of such a procedure," adverting to the applicable regulation, AR 635–40. The Board thus did not hold that plaintiff's difficulties were "expected." It held that they were within the scope of the risk inherent in the medical procedures. The court has no basis to dispute, much less find legal error in the Board's application of the appropriate regulation to the medical procedures employed here.

## CONCLUSION

There is no question that plaintiff has suffered tragically. The court is not, however, empowered to substitute its judgment for that of the Board that his injuries were not service related in the sense required by law. Accordingly, plaintiff's motion for summary judgment is denied. Defendant's motion is granted. The clerk is directed to dismiss the complaint. No costs.